Joseph Zoilesny, Appellee, v. University Club of Chicago, Appellant.

### Gen. No. 15,134.

1. MASTER AND SERVANT—*when violation of rule precludes recovery.* If a rule be reasonable and known to the servant and he is injured by virtue of his disobedience thereof, he is not entitled to recover.

2. CONTRIBUTORY NEGLIGENCE—*what equivalent to.* If a party is unable to remember what occurred for some time before the accident and there was no witness thereto and the circumstances point as much to the negligence of the plaintiff as to its absence, he cannot recover.

Action in case for personal injuries. Appeal from the Superior court of Cook county; the Hon MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed June 2, 1910. Rehearing denied June 13, 1910.

FOLLANSBEE, McCONNELL & FOLLANSBEE, for appellant; MITCHELL D. FOLLANSBEE and RALPH D. STEVENSON of counsel.

FREDERIC D. JORDON, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the University Club of Chicago from a judgment for $5,000 recovered against it by Joseph Zoilesny in an action on the case for personal injuries. In the club house of defendant was a passenger elevator and also a small freight elevator or dumb waiter, operated by an electric motor, which ran to the seventh floor. Plaintiff had been in the service of defendant about six weeks before he sustained the

injury for which he sued.    The cable which suspended
the car of the freight elevator broke, the car fell from
the seventh floor to the first, and plaintiff was found
in the car with his right thigh bone broken.

We think that from the evidence the jury might
properly find that the cable which broke was defective
and had been defective for such a length of time, that
if the defendant had exercised reasonable care it would
have known of such defective condition before the ac-
cident, and also, that the plaintiff did not know of the
defective condition of the cable, and was not negligent
in failing to discover such defective condition.

The car of the freight elevator was three feet wide,
two feet two inches deep and four feet high.    The side
towards the door of the shaft and the top were open.
A T iron ran from the center of the top of one end of
the car to the center of the top of the other end, and the
hoisting cable was attached to the center of the T iron
by clamps.    It was twelve inches from the rear side of
the car to the T iron and twelve inches from the T iron
to the front edge of the car.    A switch threw the cur-
rent on and off the motor and was operated by a hand
cable.    At each floor was a door opening into the shaft,
so that a person on any floor could, by pulling on the
hand cable, raise, lower, or stop the car.    At the seventh
floor the car stopped automatically.    It was not in-
tended that any one should ride on the freight elevator.
To do so a man of ordinary stature must either squat
or crouch down in the car so as to bring his head below
the T iron, or stand with the upper part of his body in
the space, twelve inches wide, between the T iron and
the back wall of the car, or stand in front of the T
iron, where there was only a space of twelve inches be-
tween the T iron and the edge of the car.    The steward
of the Club when he hired plaintiff told him that he
must not ride on the freight elevator.    He saw plain-
tiff riding on the elevator only once, and then told him
to keep off it, that it was dangerous to ride on it.    The
kitchen was on the sixth floor, the ice was kept on the

seventh, and the eighth was used as a store room. The elevator was used to take up supplies, to take down garbage in cans and take up the empty cans, and to carry cooked food and dishes from one floor to another. Plaintiff prepared the ice for use, swept, cleaned, took up the garbage, placed it in cans and sent them down on the elevator to the garbage man, and took the empty cans from the elevator when they were returned.

The testimony as to the circumstances attending plaintiff's injury was in substance as follows: Plaintiff testified that he came to the club house at six in the morning and sent down the garbage in cans; that the ice man then brought up the ice to the seventh floor and took it off from the elevator; that plaintiff wanted to sweep the floor of the car and the floor of the room; "I was sweeping the floor and sweeping this elevator, the small pieces of ice, chips of ice and water that was on the elevator; there were other small pieces such as pieces of meat, bone, pie and so forth." Asked by his counsel the last thing he knew before he was hurt, the position he was in, etc., he answered, "I had a broom and in that position was sweeping the floor, (witness rising and stooping over), and sweeping off the dummy.

Q. Were you standing in front of the elevator, or on the elevator then? A. At the elevator sweeping.

THE COURT: Q. Were your feet on the elevator or were they on the floor? A. On the floor.

MR. JORDAN: Did you hear any noise at that time? A. While sweeping something happened very quick, (the interpreter, 'the witness snapping his fingers there'), and then I fell down and that is the last I knew." He further testified that the next he knew he was at the hospital. On cross-examination he testified as follows:

"Q. What is the last thing you remember there, when you were sweeping at the University Club? A. Why I remember I had a broom, and I was sweeping and suddenly a crash, and I fell, that is all. Q. Were

you facing the elevator at the time you were sweeping? A. Of course, because I was sweeping it off; I had to face it''.

Emma Campana, who was at work on the seventh floor, testified that she heard a snapping noise, then a noise as of something falling, and saw a broom fly back into the room from the elevator. Bussema, called by the defendant, testified that he was the driver of a garbage wagon; that before the accident he had sent up two empty garbage barrels on the elevator and was waiting for a full barrel to come down; that just then, "the whole elevator came down", with plaintiff and an empty soap grease barrel in it; that he took the barrel off from the elevator and then took plaintiff off. Whitcomb, the night clerk, called by plaintiff, testified that when he reached the foot of the shaft plaintiff was still in the car, and that he and a garbage man took him out, and that there was no barrel in the car.

The defendant asked and the court gave the following instruction: "If you believe from the evidence that the plaintiff was, at the time of his injury, riding upon the dumb-waiter, then you are instructed that under the circumstances of this case, as a matter of law, he is not entitled to recover, and you shall find the defendant not guilty." This instruction was proper under the undisputed evidence in the case. It was a rule of the defendant that no one should ride on the freight elevator or dumb waiter. The rule was reasonable, was known to the plaintiff, and if, in violation of such rule, he was riding on the elevator when injured, he was guilty of such negligence as to prevent his recovery. Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Labat Master & Servant, sec. 365.

As to what caused plaintiff to fall we have only his own testimony, and that fails to show how or in what manner the breaking of the cable caused him to fall. He was standing, according to his testimony, on the floor of the club house, not on the floor of the elevator. The T iron was only four feet above the level of the

floor on which he stood and was only twelve inches in front of the back wall of the car. He would not in sweeping the floor of the car take a position which brought his head under the T iron, and there is no evidence tending to show that his head was under the T iron or that it was struck by it. It is said in behalf of plaintiff that the reason that he cannot state by what he was struck or how he came to fall is, that a sudden and severe shock often causes the injured person to forget the circumstances immediately preceding the injury. This view finds support in the testimony of Dr. Doane, a witness for the defendant, and in N. J. R. R. Co. v. Palmer, 33 N. J. Law, 90, and Griffith v. B. & O. R. R. Co., 44 Fed. 574. Admitting that plaintiff was unable to remember what occurred for some time before he fell, and we have a case where there is, practically, no eye witness to the accident. In such case the circumstances must be such as to show that the plaintiff exercised proper care for his own safety. In such a case, where the circumstances point as much to the negligence of the plaintiff as to its absence, the plaintiff cannot recover. Cordell v. N. Y. C. & H. R. R. Co., 75 N. Y. 330.

In this case the circumstances tend quite as strongly to show that plaintiff was riding on the elevator when the cable broke, as they do to show that he was not. He was found in the car of the elevator at the foot of the shaft. While not impossible, it is exceedingly improbable that he could have gotten into the car after the cable broke.

In our opinion, whether the plaintiff was or was not able to remember the occurrences preceding his fall, the evidence fails to show a right of recovery against the defendant. If he remembered and truly stated all that occurred immediately before his fall, he cannot recover because his testimony fails to show that the breaking of the cable caused or contributed to his fall and consequent injury. If, because of his injury, he was unable to remember the occurrences preceding his

fall, then the circumstances pointed as much to negligence on his part, which directly contributed to his injury, as to the absence of such negligence.

For the reasons indicated the judgment of the Superior Court will be reversed.

*Reversed.*